United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

CHRISTOPHER LEE VITTI,

Plaintiff,

v.

KEVIN BRIAN JONES, et al.,

Defendants.

Case No.  24-cv-00544-RMI

**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS**

Re: Dkt. Nos. 11, 14, 15

Plaintiff Mr. Vitti, proceeding *pro se*, has filed this civil rights action under 42 U.S.C. §§ 1983 and 1985. Compl. (Dkt. 1). Mr. Vitti alleges that the County of Del Norte ("County"), the California Superior Court of Del Norte County ("Superior Court"), employees of the County and the Superior Court, and a California Highway Patrol ("CHP") Officer violated Mr. Vitti's constitutional rights under the First, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments in addition to his rights under several provisions of the California Civil Code. *See id.* at 9 – 23. In three Motions to Dismiss, Defendants request dismissal of Mr. Vitti's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Defs.' Mots. (Dkts. 11, 14, 15). For the reasons stated below, the Motions to Dismiss are granted. Mr. Vitti is granted leave to amend his Complaint as described herein.

**BACKGROUND**

Mr. Vitti alleges the following facts:  In September of 2022, Mr. Vitti was pulled over by a CHP Officer although he "broke no laws and committed no crime." Compl. (Dkt. 1) at 5. Seeking to contest the resulting ticket and charges, Mr. Vitti requested an in-person jury trial at the

California Superior Court in Del Norte County. *Id.* On January 9, 2023, Commissioner Jones presided by Zoom over Mr. Vitti's traffic hearing. *Id.* Mr. Vitti appeared in person. *Id.* Contrary to Mr. Vitti's request for a jury trial, Commissioner Jones acted as the sole adjudicator. *Id.* This, Mr. Vitti alleges, was the first violation of his constitutional rights, specifically, the right to a trial by jury under the Sixth and Seventh Amendments. *Id.*

During his traffic hearing, Mr. Vitti's phone was "unlawfully seized" by Commissioner Jones. *Id.* at 9. Although Mr. Vitti was "completely silent" and was not "talking or audio emitting" from his device, Commissioner Jones ordered court staff to confiscate his phone. *Id.* at 6. Mr. Vitti attempted to explain that he needed his phone to mount his defense, but Commissioner Jones insisted that Mr. Vitti relinquish his phone to the court. *Id.* Ms. Williams and Ms. Hisoire, both clerks of the court, "told Mr. Vitti to hand over his phone" (*Id.* at 10) and Deputy Emsaeel, the bailiff, approached Mr. Vitti and "asked [him] for his phone but backed off" (*id.* at 9-10). Deputy Emsaeel also "asked the judge if Mr. Vitti [would get] his phone back" after the hearing (*Id.* at 6). Commissioner Jones said he would. *Id.* Eventually, a CHP Officer "aggressively seized" Mr. Vitti's phone and, in the process of doing so, "committed battery by taking Mr. Vitti's phone." *Id.* at 9-10. Mr. Vitti's phone was returned to him at the conclusion of the proceedings. *See id.* at 6. Mr. Vitti alleges that the confiscation of his phone violated his Fourth, Eighth, and Fourteenth Amendment rights. *Id.*

Without his phone, Mr. Vitti was required to defend his case from memory. *Id.* at 6. During the proceeding, Commissioner Jones "rushed" Mr. Vitti, did not give him enough time for oral argument, and allowed him to speak "only ten words at a time." *Id.* at 6, 9. Mr. Vitti alleges that by restricting his oral arguments, Commissioner Jones violated his First and Fourteenth Amendment rights.

Surprised by the chaos in court, Mr. Vitti remarked that the proceedings were "bonkers." *Id.* at 6. Commissioner Jones told Mr. Vitti that he was being disrespectful and charged him with contempt of court. *Id.* Mr. Vitti was given a sticky note with the date and time for the contempt hearing by one of the court clerks. *Id.* Ultimately, Commissioner Jones found Mr. Vitti guilty of the traffic violations and levied fines against him. *Id.* at 12.

1    After the traffic hearing, Mr. Vitti submitted a records request to the Superior Court for

2    transcripts and video footage of the traffic proceedings. *Id.* at 7. The request was denied. *Id.*

3    Eventually, Mr. Vitti paid $25 to receive the Superior Court's records of his traffic proceeding. *Id.*

4    Mr. Vitti also submitted a request for Deputy Emsael's body camera footage from the District

5    Attorney's Office and, through County Counsel, the Sheriff's Office. *Id.* These requests were

6    denied "and then approved but not given anywhere near on time for a fair trial." *Id.* at 15. Mr. Vitti

7    alleges that unidentified District Attorneys were uncommunicative and refused to help him obtain

8    the evidence he needed to prepare for his contempt hearing. *Id.* at 7. He also alleges that the

9    Sheriff's Office intentionally deleted the body camera footage, though he later received the

10   footage he requested. *Id.* at 8.

11   Mr. Vitti's contempt of court hearing was held on February 9, 2023. *Id.* Commissioner

12   Jones presided over the hearing and the contempt charges were dropped. *Id.* On March 23, 2023,

13   Mr. Vitti received the body camera footage. *Id.* at 8. Mr. Vitti alleges that the County and its

14   employees violated his Fourteenth Amendment rights as well as the California Public Records Act

15   by completing his records request in an untimely manner. *See id.* at 13-16.

16   Mr. Vitti filed this Complaint in federal court on January 29, 2024. *Id.* at 1. On March 4,

17   2024, CHP Officer Adam Sept filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal

18   Rules of Civil Procedure. Def.'s Mot. (Dkt. 11).  Defendants Deanna Emsaeel, Diana Stanley,

19   Katherine Micks, Todd Zocchi, Edwin Miramontes and the County of Del Norte, (collectively, the

20   "County Defendants") soon followed suit. Def.'s Mot. (Dkt. 14). The final Motion to Dismiss was

21   filed on March 5, 2024, by Kevin Brian Jones, Esperanza Esparza, Courtney Williams, Veronica

22   Hisoire, and the Superior Court (collectively, the "Court Defendants") who raised additional

23   issues under Rule 12(b)(1) and Rule 12(b)(6). Defs.' Mot. (Dkt. 15). All parties have consented to

24   the jurisdiction of a magistrate judge. (Dkts. 10, 13, 15).

25                              **LEGAL STANDARDS**

26   Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Live Ins. Co. of*

27   *Am.*, 511 U.S. 374, 377 (1994). As such, the burden of establishing subject matter jurisdiction

28   rests upon the party asserting it. *Id.* Because subject matter jurisdiction involves a court's power to

                                          3

hear a case, it can never be forfeited or waived. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Further, courts have "an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *see also* Fed. R. Civ. P. 12(h)(3).

A jurisdictional attack under Rule 12(b)(1) may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When addressing a facial attack, the court must assume the factual allegations of the complaint are true and determine whether, as alleged, they establish subject matter jurisdiction. *Savage v. Glendale High Union Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). A motion to dismiss for a facially inadequate complaint is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. *Id.*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Although the Federal Rules do not require "detailed factual allegations," plaintiffs must state "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The "facial plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Instead, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

During this inquiry, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true all properly pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *See e.g.*, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *see also Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). However, courts are not required to presume the truth of inferences that are unreasonable or of conclusory legal statements cast as factual allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Miranda v. Clark Cty., Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002)

United States District Court
Northern District of California

1    ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss

2    for failure to state a claim."); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 ("Nor

3    is the court required to accept as true allegations that are merely conclusory, unwarranted

4    deductions of fact, or unreasonable inferences."), *as amended*, 275 F.3d 1187 (9th Cir. 2001).

5          *Pro se* litigants are entitled to liberal construction of their pleadings. *Eldridge v. Block*, 832

6    F.2d 1132, 1137 (9th Cir. 1987) ("[T]he allegations of [a *pro se* litigant's complaint] however

7    inartfully pleaded are held to less stringent standards that formal pleadings drafted by lawyers.");

8    *see also Hoffman v. Preson*, 26 F.4th 1059, 1063 (9th Cir. 2022) ("We construe *pro se* complaints

9    liberally and afford the petitioner the benefit of any doubt."). However, even a liberal construction

10   of a complaint "may not supply essential elements of the claim that were not initially pled."

11   *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (citing *Pena v. Gardner*, 976 F.2d 469, 471

12   (9th Cir. 1992)).

13         Thus, courts may disregard allegations that are contradicted by other allegations in a

14   complaint or by facts established in exhibits attached to the complaint. *See Durning v. First*

15   *Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Furthermore, courts are not required to accept

16   as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United*

17   *States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987). In adjudicating a motion to dismiss,

18   courts may also consider matters of public record, including pleadings, orders, and other papers

19   filed with the court. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986).

20         When a complaint is dismissed for failure to state a claim, "leave to amend should be

21   granted unless the court determines that the allegation of other facts consistent with the challenged

22   pleading could not possibly cure the deficiency." *Schreiber Dist. Co. v. Serv-Well Furniture Co.*,

23   806 F.2d 1393, 1401 (9th Cir. 1986); *see also Skhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)

24   ("A district court should not dismiss a *pro se* complaint without leave to amend unless it is

25   absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

26                                          **DISCUSSION**

27         As an initial matter, although Defendants Micks, Miramontes, Stanley, and Esparza are

28   identified in the caption of the Complaint and listed as defendants for certain claims, Mr. Vitti

                                               5

does not allege any facts connecting these Defendants to his various claims. *See generally* Compl.

(Dkt. 1). The court cannot discern whether and to what extent these Defendants were involved in

the events at issue. Mr. Vitti is entitled to a "liberal construction" of his pleadings, but the court

cannot go so far as to "supply the essential elements of a claim." *See Litmon*, 768 F.3d at 1241.

The claims against Defendants Micks, Miramontes, Stanley, and Esparza are therefore

**DISMISSED** with leave to amend in accordance with this order.

### I.        Subject Matter Jurisdiction

Several of Mr. Vitti's claims are precluded for want of subject matter jurisdiction. These

include all claims against the Court Defendants, the official-capacity claims against the District

Attorney Zocchi and Officer Sept, and all claims seeking injunctive relief. The court will address

each of the jurisdictional bars in turn.

### A.   *Eleventh Amendment Immunity*

The Eleventh Amendment bars suits against "a state, an arm of the state, its

instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995); *see*

*also Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999); *Brown v. California Dep't. of*

*Corrections*, 554 F.3d 747 (9th Cir. 2009) (holding that, with respect to §1983 actions, California

has not waived its Eleventh Amendment immunity). The Eleventh Amendment's grant of

immunity typically extends to state employees who are sued in their official capacities. *Ulaleo v.*

*Paty*, 902 F.2d 1395, 1398 (9th Cir. 1990); *see also Kentucky v. Graham*, 473 U.S. 159, 165

(1985) (reasoning that official-capacity suits "generally represent only another way of pleading an

action against an entity of which an officer is an agent" and "in all respects other than name, [are]

to be treated as a suit against the entity"). Eleventh Amendment immunity bars suit regardless of

the relief sought with one notable exception: those suits for "prospective, non-monetary relief

against state officers." *Pennhurst State Sch.  Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see*

*also Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003) ("[S]uits against an official for prospective

relief are generally cognizable, whereas claims for retrospective relief (such as damages) are

not.").

State superior courts are "arms of the state" entitled to Eleventh Amendment immunity.

*Simmons v. Sacramento County Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003).  This immunity extends to superior court employees. *Id.* Further, in California, District Attorneys possess Eleventh Amendment immunity when acting in their prosecutorial capacity (*see Weiner v. San Diego Cty.*, 210 F.3d 1025, 1030 (9th Cir. 2000)) and official-capacity suits are similarly barred when brought against California Highway Patrol Officers (*Sims v. Lee*, 651 Fed. App'x 570 (9th Cir. 2016)). Accordingly, Mr. Vitti's claims against the Superior Court are barred by Eleventh Amendment immunity. His official-capacity claims for damages against Superior Court employees and CHP Officer Sept are similarly barred, as are the official-capacity claims for damages brought against District Attorney Zocchi who, as discussed in Section II(B)(3), *infra*, acted in his prosecutorial capacity in relation to the claims at issue. As such, these claims are **DISMISSED** without leave to amend.

        B.   <u>Standing for Injunctive Relief</u>

In addition to his claims for damages, Mr. Vitti seeks injunctive relief. *See* Compl. (Dkt. 1) at 23. Mr. Vitti requests this court order (1) that the Superior Court properly apply state and federal law; (2) that Del Norte County provide jury trials upon request, regardless of the nature of the proceeding; (3) that county employees address Mr. Vitti with respect; and (4) that Del Norte County change its policies regarding records requests and adequately train their employees in accordance with that policy. However, Mr. Vitti has failed to allege sufficient facts to establish standing for injunctive relief.

To invoke federal jurisdiction, Mr. Vitti must allege a "personal stake in the outcome" of this matter and that he has "sustained or is immediately in danger of sustaining some direct injury" that is "real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) (internal citations and quotation marks omitted). With respect to injunctive relief, "past exposure to illegal conduct does not in itself" suffice; Mr. Vitti must also allege "continuing, present adverse effects." *Id.* at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974)); *see also O'Shea*, 414 U.S. at 495-496 (holding that plaintiffs could not establish standing for injunctive relief by alleging that they "anticipate violating lawful criminal statutes and

being tried for their offenses" and, as a result, would find themselves before a tribunal whose procedures allegedly violated the Constitution).

Mr. Vitti's traffic proceedings have concluded, and his contempt charges have been dropped. He does not allege that he is currently engaged in proceedings of any kind before the Superior Court. Even construing Mr. Vitti's Complaint to allege that he might again be brought before the Superior Court and its employees for adjudication of traffic violations, "such speculation is insufficient to establish the existence of a present, live controversy" of the kind necessary to convey standing. *See Lyons*, 461 U.S. at 104 (quoting *Ashcroft v. Mattis*, 431 U.S. 171 (1977)). Regarding Mr. Vitti's claims against the County Defendants for a delay in providing public records, Mr. Vitti similarly does not allege an ongoing harm sufficient to convey standing for injunctive relief. He has received the records he requested and does not allege that he has a pending records request before the County Defendants. Accordingly, Mr. Vitti has failed to allege that he has standing to seek the injunctive relief requested in this action. Mr. Vitti's claims seeking injunctive relief are hereby **DISMISSED** with leave to amend in accordance with this order.

C.  *The Rooker-Feldman Doctrine*

Mr. Vitti's claims against the Court Defendants in their individual and official capacities are further barred by the *Rooker-Feldman* doctrine, which prohibits federal district courts from presiding over *de facto* appeals of state court decisions. *See Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). "A *de facto* appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state court judgment based on that decision.'" *Bell v City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (quoting *Noel*, 341 F.3d at 1161). The *Rooker-Feldman* doctrine applies even when a plaintiff's "challenge to the state court decision involves federal constitutional issues." *Worldwide Church of God v. McNair*, 80 F.2d 888, 890 (9th Cir. 1986) (citing *Feldman*, 460 U.S. at 484-86 for the proposition that "this rule applies even though, as here, the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights" (internal citations omitted)); *see also Eicherly v. O'Leary*, 721 Fed. App'x 625, 627 (2018) (holding that plaintiffs' claims for alleged constitutional violations during state court proceedings by superior court judges were barred by *Rooker-Feldman*

United States District Court
Northern District of California

1    because the "relief sought amounts to a declaration that the state court judgments were invalid").

2        When a plaintiff brings a *de facto* appeal in federal district court, those claims that are

3    "inextricably intertwined" with the state court's decision are also precluded from the court's

4    review. *See Noel*, 341 F.3d at 1165. Where, as here, a plaintiff's § 1983 claims against court

5    employees in their individual capacities "succeed[] only to the extent that the state court wrongly

6    decided the issues before it" and "federal relief can only be predicated upon a conviction that the

7    state court was wrong" jurisdiction is improper. *See Cooper v. Ramos*, 704 F.3d 772, 782 (9th Cir.

8    2012) (quoting *Pennzoil Co. v. Texaco*, 481 U.S. 1, 25 (1987)).

9        Mr. Vitti alleges that he was deprived of certain constitutional rights by Commissioner

10   Jones and his clerks and that, because of these deprivations, an erroneous judgement was entered

11   against him. Mr. Vitti now asks this court to review Commissioner Jones' decision, find it was

12   based on unconstitutional procedural and legal errors, and award Mr. Vitti damages and injunctive

13   relief accordingly. At bottom, Mr. Vitti's claims complain of legal wrongs committed by the state

14   court and seek relief from the decisions of that court. As such, Mr. Vitti's claims against the Court

15   Defendants are a forbidden *de facto* appeal, barred by the *Rooker-Feldman* doctrine.

16        To grant the relief Mr. Vitti seeks against Commissioner Jones and his court clerks in

17   their individual capacities this court would have to determine that Mr. Vitti's traffic court

18   proceedings were conducted in contravention of the Constitution. Thus, Mr. Vitti's individual-

19   capacity claims against the Court Defendants are indistinguishable from his official-capacity

20   claims—both seek relief that "amounts to a declaration that the state court judgments were

21   invalid." *See Eicherly*, 721 Fed. App'x at 627. Accordingly, this court lacks jurisdiction over all

22   claims against Court Defendants; these claims are **DISMISSED** without leave to amend.

23   **II.    Failure to State a Claim**

24       At this juncture, the following claims remain: Mr. Vitti's § 1983 and 1985 claims against

25   Officer Sept and Deputy Emsaeel for violations of the Fourth, Eighth, and Fourteenth

26   Amendments; Mr. Vitti's § 1983 and 1985 claims against District Attorney Tod Zocchi for

27   violations of the Fourteenth Amendment; Mr. Vitti's § 1983 and 1985 claims against the County

28

for violations of the Fourteenth Amendment; and Mr. Vitti's state law claims against these same defendants.

### A.  *Plaintiff's § 1985 Claims*

Mr. Vitti fails to allege any facts to support a claim for relief under § 1985 of the Civil Rights Act. To state a claim under § 1985, plaintiffs must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Griffin v. Brekenridge*, 403 U.S. 88, 102-103 (1971). To satisfy the second element, a plaintiff must identify a legally protected right and that the deprivation of that right was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102*; see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). Mr. Vitti does not allege that any of the named Defendants were involved in a conspiracy. Nor does the Complaint contain any allegations that Mr. Vitti is a member of a protected or quasi-protected class. Indeed, Mr. Vitti's Complaint is devoid of any factual allegations addressing the required elements of a § 1985 claim. Mr. Vitti's § 1985 claims are therefore **DISMISSED** with leave to amend in accordance with this order.

### B.  *Plaintiff's § 1983 Claims*

Plaintiff's remaining § 1983 claims are barred because he has failed to state a claim upon which relief may be granted and by qualified and prosecutorial immunity.

#### 1.  *Plaintiff's Claims Against the County*

As an initial matter, Mr. Vitti brings this suit against Deanna Emsaeel in her official capacity only. "[W]hen both a local government officer and the government entity are named in an action under section 1983, and an officer is named in their official capacity only, the officer is a redundant defendant and should be dismissed upon the request of the defendant." *Luke v. Abbot*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) (citing *Monell v. Dep't Soc. Servs.*, 436 U.S. 658 (1978) and *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996)). Because the County has requested as much, (Defs.' Mot. (Dkt. 15) at 19) the court **DISMISSES** Deputy Emsaeel as a

United States District Court
Northern District of California

1    redundant defendant.

2          As for Mr. Vitti's claims against the County of Del Norte, Mr. Vitti has failed to state a

3    claim upon which relief may be granted. A local government may be liable for constitutional torts

4    committed by its officials according to municipal policy, practice, or custom. *See Monell*, 436

5    U.S. at 690–91 (1978). However, the County is only subject to § 1983 liability if its policies

6    "caused the particular constitutional violation at issue." *King v. Cnty. Of Los Angeles*, 885 F.3d

7    548, 558 (9th Cir. 2018) (quoting *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 559 (9th Cir.

8    2001)). As such, a plaintiff must "go beyond the respondeat superior theory of liability and

9    demonstrate that the alleged constitutional deprivation was the product of a policy or custom of

10   the local governmental unit." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016);

11   *see also Pasadena Republican Club v. Western Justice Ctr.*, 985 F.3d 1161, 1172 (9th Cir. 2021).

12   The "policy or custom" requirement applies irrespective of the relief sought. *Los Angeles Cty. v.*

13   *Humphries*, 562 U.S. 29, 34 (2010).

14          In his Complaint, Mr. Vitti repeatedly states that the County "has a policy, custom, or

15   practice" of denying the rights at issue, or of "fail[ing] to train their employees" regarding these

16   rights. *See e.g.*, Compl. (Dkt. 1) at 10, 11, 15. However, Mr. Vitti does not accompany these

17   conclusory allegations with any supporting factual matter. Conclusory allegations, unsupported by

18   allegations of fact, are insufficient to satisfy this court's pleading standards. *See Miranda*, 279

19   F.3d at 1106. Accordingly, Mr. Vitti's claims against the County of Del Norte are **DISMISSED**

20   for failure to state a claim.

21          Plaintiff's claims against the County are incapable of amendment. Mr. Vitti alleges that the

22   County violated his Fourth and Fourteenth Amendment rights when Deputy Emsael, at the

23   direction of Commissioner Jones, held Mr. Vitti's phone for the duration of his hearing. However,

24   the County cannot be held liable for Commissioner Jones' facially valid orders. *See Arnold v. Cty.*

25   *Of El Dorado*, No. S-10-3119 KJM GGH PS, 2011 WL 5884248 *3 (E.D. Cal. Nov. 23, 2011)

26   *report and recommendation adopted* 2012 WL 2681535 (E.D. Cal. July 6, 2012) (holding that a

27   county "cannot be subject to liability for its failure to overrule, countermand, challenge, or

28   otherwise interfere with a Judge's facially valid order" because the Judge is a state actor who is

1  beyond the County's control) (citation omitted) (cleaned up)). When bailiffs execute a Judge's

2  orders, they are state actors beyond the County's control. *Id.; cf. Haldane v. Chagnon*, 345 F.2d

3  601, 604 ("A court's bailiff is required by law to preserve order in the courtroom, to protect the

4  court, and to comply with directions given him [or her] by the judge during the course of judicial

5  proceedings."). In short, the County is not responsible for Commissioner Jones' orders and Mr.

6  Vitti cannot state a § 1983 claim against the County for alleged constitutional violations over

7  which it had no authority or control.

8        Mr. Vitti's Eighth Amendment claim against the County is incapable of amendment

9  because Mr. Vitti was not convicted of a crime or in custody when his phone was seized. *See*

10  *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441

11  U.S. 520, 535 (1979)). This claim is better styled as a Fourth Amendment excessive force claim.

12  *Graham v. Connor*, 490 U.S. 368, 388 (1989) (holding that claims that "law enforcement officials

13  used excessive force in the course of making an arrest, investigatory stop, or other 'seizure'" are

14  "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard). Insofar

15  as Mr. Vitti alleges Deputy Emsael used excessive force in violation of the Fourth Amendment,

16  his claims are conclusory, unsupported by sufficient factual matter, and contradicted by other

17  allegations in the Complaint. It is clear from the Complaint that Deputy Emsaeel did not have any

18  physical contact with Mr. Vitti who alleges that Deputy Emsaeel "asked [him] for his phone but

19  backed off", accepted the phone from Officer Sept after it was seized, and held it for the duration

20  of the proceedings. *See* Compl. (Dkt. 1) at 6. These facts are confirmed and reiterated in Mr.

21  Vitti's Response to the Motions to Dismiss. *See* Pl.'s Opp. (Dkt. 19) at 3. The facts alleged in the

22  Complaint preclude any possibility that Deputy Emsaeel used excessive force. As such, any

23  amendment of this claim would be futile.

24        Finally, Mr. Vitti alleges that the County violated his Fourteenth Amendment rights by

25  failing to respond to his records requests in a timely manner. However, there is no constitutional

26  right to receive government records. *Houchins v. KQUED, Inc.*, 438 U.S. 1, 15 (1978) ("Neither

27  the First Amendment nor the Fourteenth Amendment mandates a right of access to government

28  information or sources of information within the government's control."). Additionally, alleged

1   violations of state law—in this instance, the California Public Records Act ("CPRA")—cannot

2   sustain a § 1983 claim. *See Galen v. Cty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007)

3   ("Section 1983 requires [Plaintiff] to demonstrate a violation of federal law, not state law"); *see*

4   *also Dayton v. James*, No. 2:16-cv-1735-KJM-KJN PS, 2017 WL 68240, at *3 (E.D. Cal. Jan 6,

5   2017) (holding that violations of the CPRA cannot support a Fourteenth Amendment due process

6   claim under § 1983). Thus, Mr. Vitti cannot state a § 1983 claim for relief against the County for

7   failing to provide him with government records.[1]

8       Accordingly, any amendment of Mr. Vitti's claims against the County of Del Norte would

9   be futile and all claims against the County are **DISMISSED** without leave to amend.

10          *2.  Plaintiff's Claims Against District Attorney Zocchi*

11      Having found that there is no constitutional right to access government records, it follows

12  that Mr. Vitti's claims against District Attorney Zocchi for allegedly withholding government

13  records fail to state a claim upon which relief may be granted. To bring a § 1983 action, the

14  plaintiff must allege some violation of federal constitutional or statutory rights. *Galen*, 477 F.3d at

15  662. Here, Mr. Vitti has failed to do so.

16      Additionally, to the extent Mr. Vitti alleges that Mr. Zocchi failed to provide "*Brady*

17  material", or withheld evidence to which he was entitled, or to communicate with him about his

18  case, Mr. Zocchi is protected from suit by prosecutorial immunity. A state prosecutor "enjoys

19  absolute immunity from § 1983 suits for damages when he acts within the scope of his

20  prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *see also Ray v. Lara*, 31

21  F.4th 692, 699 (9th Cir. 2022) ("[P]rosecutors enjoy absolute immunity … for activities that are

22  intimately associated with the judicial phase of the criminal process." (internal citation and

23

24  _____

[1] To the extent Mr. Vitti's claims are based on a purported failure of prosecutors to provide "*Brady*
25  material," or to prosecute certain violations of California law, the prosecutors were state actors, and the
County is not responsible. *See Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000) (holding
26  that because district attorneys are state officers when exercising their prosecutorial functions, § 1983 claims
against the county fail because the state is the relevant actor, not the county). As discussed in Section I(A),
27  *supra*, and Section II(B)(3), *infra*, District Attorney Zocchi was acting in his prosecutorial capacity when
he allegedly failed to provide evidence to Mr. Vitti. Thus, official capacity claims against Mr. Zocchi for
28  these decisions are barred by Eleventh Amendment immunity because the state is the relevant actor.
Individual-capacity claims, as discussed below, are barred by prosecutorial immunity.

United States District Court
Northern District of California

1    quotation marks omitted)). Protected activities include those that are "preliminary to the initiation

2    of a prosecution and actions apart from the courtroom." *Burns v. Reed*, 500 U.S. 478, 491 (1991).

3    Prosecutorial immunity applies to a prosecutor's decisions regarding *Brady* material and discovery

4    information. *See Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) *and Griffin v. Asla*, No.

5    3:21-cv-01036-MO, 2022 WL 4237275 *6 (D. Or. Sept. 14, 2022), *aff'd* 2023 WL 7411535 (9th

6    Cir. November 9, 2023). Accordingly, Plaintiff's claims against Mr. Zocchi in his individual

7    capacity are barred by prosecutorial immunity and are **DISMISSED** without leave to amend.

8           As mentioned in Section I(A), *supra*, Plaintiff's official-capacity claims against Mr.

9    Zocchi are improper because they are barred by the Eleventh Amendment. The prosecutorial

10   immunity analysis under § 1983 may guide the immunity analysis under the Eleventh

11   Amendment. *See Ceballos v. Garcetti,* 361 F.3d 1168, 1183 n. 11 (9th Cir. 2004) reversed and

12   remanded on other grounds by *Garcetti v. Ceballos*, 547 U.S. 410 (2006). The court has found that

13   Mr. Zocchi acted in his prosecutorial capacity with respect to Mr. Vitti's requests for evidence;

14   thus, Mr. Vitti's official-capacity claims for damages against Mr. Zocchi are barred by the

15   Eleventh Amendment.

16          *3.   Plaintiff's Claims Against Officer Sept*

17          Mr. Vitti brings three § 1983 claims against Officer Sept in his individual capacity for

18   violation of Mr. Vitti's Fourth, Eighth, and Fourteenth Amendment rights. All three claims fail

19   because Mr. Vitti does not allege sufficient facts to support his claims and because Officer Sept is

20   protected by qualified immunity.

21          "Qualified immunity shields a police officer from civil damages under Section 1983

22   'unless the officer[] violated a clearly established constitutional right." *Seidner v. de Vries*, 39 F.

23   4th 591, 595 (9th Cir. 2022) (quoting *Monzon v. City of Murrieta*, 978 F.3d 1150, 1156 (9th Cir.

24   2020)). In conducting the qualified immunity analysis, the court must ask "(1) did the officer

25   violate a constitutional right, and (2) was that right 'clearly established at the time of the events at

26   issue'?" *Id.* Even if a plaintiff has alleged violations of a clearly established right, officers are

27   entitled to qualified immunity if they made a reasonable mistake as to what the law requires.

28   *Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("If the officer's mistake as to what the law requires is

United States District Court
Northern District of California

14

1    reasonable, [] the officer is entitled to qualified immunity."); *see also Wilkins v. City of Oakland*,

2    350 F.3d 949, 955 (9th Cir. 2003) ("Qualified immunity [] provides ample protection to all but the

3    plainly incompetent or those who knowingly violate the law." (internal citations and quotation

4    marks omitted)). The "existence of a statute or ordinance authorizing particular conduct is a factor

5    which militates in favor of the conclusion that a reasonable officer would find that conduct

6    constitutional." *Grossman v. City of Portland,* 33 F.3d 1200, 1209 (9th Cir. 2010)*. However,*

7    "such a statute will not shield the official where it 'authorizes official conduct which is patently

8    violative of fundamental constitutional principles[.]" *Id.*

9        Here, Mr. Vitti was in clear violation of Court Local Rule 2.7(c), which states that cellular

10   phones not specifically authorized by the court must be turned off prior to entering the courtroom

11   or be subject to confiscation. *See* Def.'s Request for Judicial Notice (Dkt. 12) at 18-19.[2] Given the

12   Superior Court's rules prohibiting Mr. Vitti's conduct, the Commissioner's order that Mr. Vitti's

13   phone be confiscated, and the assurances given by the Commissioner that Mr. Vitti would be

14   reunited with his phone after the hearing, Officer Sept acted as any reasonable Officer would.

15   Court Local Rule 2.7(c) and the Commissioner's order are not "patently violative of foundational

16   constitutional principles." *See Grossman*, 33 F.3d at 1209. Thus, even assuming Mr. Vitti could

17   allege that Officer Sept violated a "clearly established right," Officer Sept would be entitled to

18   qualified immunity because his belief that he acted lawfully was reasonable.

19       Unlawful enforcement of an otherwise lawful order, however, demonstrates unreasonable

20   behavior and will stip an officer of qualified immunity. *See Pierce v. Multnomah Cty., Or.*, 76

21   F.3d 1032, 1037 (9th Cir. 1996); *Chew v. Gates*, 27 F.3d 1432, 1450 (9th Cir. 1994). Mr. Vitti

22   alleges that, in seizing his phone, Officer Sept violated the Eighth Amendment's prohibition

23   against cruel and unusual punishment, stating that Officer Sept "aggressively seized" Mr. Vitti's

24   phone and "committed a battery" against him. First, as noted above, Mr. Vitti's Eighth

25   Amendment claims are better styled as a Fourth Amendment excessive force claims. *See Castro*,

26   833 F.3d at 1067-68 *and Graham*, 490 U.S. at 388. Second, Mr. Vitti's conclusory allegations that

27

28   _____
     [2] Pursuant to Federal Rules of Evidence 201(b), the court takes judicial notice of Del Norte Superior Court
     Rule 2.7(c) and grants Defendant Sept's Request for Judicial Notice No. 3.

*United States District Court*
*Northern District of California*

1    Officer Sept "committed a battery" and "aggressively seized" the phone are unsupported by

2    sufficient factual matter to state a claim for relief. Accordingly, Mr. Vitti has failed to state a claim

3    of excessive force under the Fourth and Fourteenth Amendments. Mr. Vitti's Eighth Amendment

4    claim is **DISMISSED** without leave to amend, as its defects are irredeemable. Mr. Vitti's Fourth

5    Amendment claims for damages against Officer Sept in his individual capacity are **DISMISSED**

6    as barred by qualified immunity. The court **GRANTS** Mr. Vitti leave to amend his Complaint

7    with respect to his Fourth Amendment excessive force claim.

8           C. *Plaintiff's State Law Claims*

9           Having dismissed all of Plaintiff's federal claims, the court declines to exercise

10   supplemental jurisdiction over Mr. Vitti's state-law causes of action. *See Gini v. Las Vegas*

11   *Metropolitan Police Dep't.*, 40 F.3d 1041, 1046 (9th Cir. 1994); *see also Schultz v. Sundberg*, 759

12   F.2d 714, 718 (9th Cir. 1985) ("Generally, dismissal of federal claims before trial dictates that the

13   pendant state claims should also be dismissed."). Accordingly, Plaintiff's state-law claims are

14   **DISMISSED** without prejudice.

15                              **CONCLUSION**

16          In sum, the court **DISMISSES** without leave to amend all claims against the Court

17   Defendants in their official and individual capacities for lack of subject matter jurisdiction. The

18   court **DISMISSES** with leave to amend all claims against Diana Stanley, Katherine Micks, and

19   Edwin Miramontes for failure to state a claim. The court **DISMISSES** without leave to amend all

20   claims against District Attorney Tod Zocchi for failure to state a claim and as barred by

21   prosecutorial immunity. The court **DISMISSES** without leave to amend all claims against Deanna

22   Emsaeel in her official capacity as redundant of Plaintiff's claims against the county. The court

23   **DISMISSES** without leave to amend all claims against the county of Del Norte for failure to state

24   a claim upon which relief can be granted. The court **DISMISSES** without leave to amend all

25   claims against Officer Sept as barred by qualified immunity apart from Plaintiff's Fourth

26   Amendment excessive force claim, which is dismissed with leave to amend. The court

27   **DISMISSES** without prejudice Plaintiff's state-law claims for lack of subject matter jurisdiction.

28   Plaintiff is **GRANTED** leave to amend in accordance with this order. Plaintiff shall have 45 days

United States District Court
Northern District of California

from the date of this order to file an amended complaint; Plaintiff is **ORDERED** to plead all

relevant facts and allegations anew. The instant Complaint is dismissed in its entirety; its

provisions shall not be incorporated by reference into future filings.

      **IT IS SO ORDERED.**

Dated: May 23, 2024

_____
ROBERT M. ILLMAN
United States Magistrate Judge